UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------

| | : | |
|---|---|---|
| BARBARA GILDAY, | : | CASE NO. 1:18-cv-1108 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. 20, 21] |
| BBDO USA LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

-------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Barbara Gilday brings breach of contract, promissory estoppel, and unjust enrichment claims against Defendant BBDO USA LLC ("BBDO"). Plaintiff Gilday claims that she is entitled to payments under a retirement benefits agreement.

This Court conducted a bench trial. The parties stipulated to all facts,[1] and briefed the legal issues.[2]

Upon considering the above materials, the Court rules in favor of Defendant BBDO on all claims.

### I. Legal Standard

"Intended third-party beneficiaries 'have the rights of parties in privity of contract and thus may bring suit for breach of contract or to enforce performance.'"[3] To establish a claim for breach

---

[1] Doc. 18.
[2] The parties filed their opening briefs on July 30, 2018. *See* Plaintiff's Opening Brief, Doc. 21; Defendant's Opening Brief, Doc. 20. The parties filed responsive briefs on August 13, 2018. *See* Plaintiff's Response in Opposition to Defendant's Opening Brief, Doc. 23; Defendant's Response in Opposition to Plaintiff's Opening Brief, Doc. 22.
[3] *Asia-Pac. Futures Research Symposium Planning Commt. v. Kent State Univ.*, 2016-Ohio-2691, 63 N.E.3d 780, ¶ 18 (11th Dist.) (citing *Waterfield Mtge. v. Buckeye State Mut. Ins. Co.,* 2d Dist. Miami No. 93–CA–53, 1994 WL 527594, *2 (Sept. 30, 1994)).

of contract under Ohio law, "a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach."[4]

When deciding contract interpretation, the court's role is to give effect to the parties' intent.[5] To achieve this, courts should "examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract."[6]

Unless ambiguous, courts should not interpret contract words beyond their plain meaning or rewrite the terms of the contract.[7] "[A]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation."[8]

## II. Analysis

### A. The Parties' Stipulated Statement of Facts

Because the parties have stipulated to all factual issues, the Court does not need to decide contested factual issues for Federal Rule of Civil Procedure 52(a) purposes.

The parties stipulated to the following facts[9]:

Thomas Gilday was once a Griswold Inc. employee. In May 1987, he and Griswold entered into the Amended and Restated Supplemental Retirement Program Agreement[10] ("Agreement"). Gilday continued to work for Griswold until his retirement in 1990.

Griswold went through various ownership changes. Defendant BBDO is now Griswold's successor in interest. BBDO and its predecessors are collectively "the Corporation."

---

[4] *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, — N.E.3d —, 2018 WL 3203053, ¶ 28 (Ohio App. 10th Dist.) (citing *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41; *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18).
[5] *See Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 953 N.E.2d 285, ¶ 37 (2011)).
[6] *Id.*
[7] *Mansfield Plumbing Prod. LLC v. Mariner Partners, Inc.*, 300 F. Supp. 2d 540, 545 (N.D. Ohio 2004) (citing *Werner v. Cincinnati Ins. Co.*, 77 Ohio App. 3d 232, 235, 601 N.E.2d 573 (10th Dist. 1991); *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997)).
[8] *Eastham*, 754 F.3d at 361 (quoting *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, 120 Ohio St. 3d 47, 896 N.E.2d 666, ¶ 16, and citing 11 Williston on Contracts § 30:5 (4th ed.)).
[9] Doc. 18.
[10] Doc. 18-1.

Case No. 1:18-cv-1108
Gwin, J.

Thomas Gilday died on December 20, 2017.

From Gilday's 1990 retirement through December 2017, the Corporation made all required payments under the Agreement. At the time of Gilday's death, the annual amount payable was about $50,000.

Plaintiff Barbara Gilday was married to Thomas Gilday at the time the Agreement was executed, and until his death.

BBDO has not made any payments under the Agreement since Thomas Gilday's death. It also does not contend that Thomas Gilday failed to perform under the Agreement.

**B. The Agreement**

The parties disagree as to whether the Agreement requires Defendant BBDO to make payments to Plaintiff Barbara Gilday, Thomas Gilday's surviving spouse, after Thomas Gilday's death. Paragraphs 2 and 3 are the pertinent provisions of the Agreement.

Paragraph 2 requires the Corporation to make annual payments to Thomas Gilday for the rest of his life. The relevant part of Paragraph 2 states:

> 2. <u>Amount of Gilday's Benefits</u>. In the event of Gilday's retirement, the Corporation shall pay to Gilday during his life an annual amount equal to Sixty-Five Thousand Dollars ($65,000) reduced by [deduction amount]. ...

Thomas Gilday's retirement[11] triggered the Corporation's obligation to make the payments.

Paragraph 3 potentially requires the Corporation to make payments to Thomas Gilday's spouse (i.e., Plaintiff Gilday) after his death. Paragraph 3(a) specifically addresses the scenario of Thomas Gilday dying after his retirement. The parties agree that Paragraph 3(a) primarily governs the issue of whether BBDO is required to make payments to Plaintiff Gilday after Thomas Gilday's death.[12]

The pertinent part of Paragraph 3 is as follows:

---

[11] *See* Doc. 18-1 ¶ 1 ("For purposes of this Agreement, 'retirement' shall mean termination of employment with the Corporation after Gilday's attainment of age fifty-six (56).").

[12] *See, e.g.*, Doc. 21 at 2–3; Doc. 20 at 6–10; Doc. 22 at 1–3.

> 3. <u>Death</u>. In the event of Gilday's death, whether after his retirement or before retirement while he is employed by the Corporation, the Corporation shall pay benefits hereunder as follows:
>
> (a) In the event of the death of Gilday after his retirement, the annual amount payable to Gilday under Paragraph 2 shall be continued to Gilday's spouse until the Corporation has paid such annual amount to Gilday and/or his spouse for a period of ten (10) years or until her earlier death, at which time all benefits payable hereunder shall terminate.

Thomas Gilday's death triggered the Corporation's obligation to make any payments required by Paragraph 3(a).

## C. Defendant BBDO Has Not Breached the Agreement

Defendant BBDO's failure to make payments to Plaintiff Gilday after Thomas Gilday's death did not breach the Agreement.[13]

Central to the parties' differing views of Defendant BBDO's obligations is the disagreement over what starts the ten-year minimum payment period under Paragraph 3(a). Defendant BBDO had an obligation to pay Plaintiff Gilday under Paragraph 3(a) only "until the Corporation has paid such annual amount to Gilday and/or his spouse for a period of ten (10) years or until her earlier death." BBDO's obligation to pay Plaintiff Gilday is discharged if the event contemplated by this condition—the making of annual payments for ten years, or Plaintiff's earlier death—has occurred.

Plaintiff argues that the ten-year minimum payment period starts at Thomas Gilday's death.[14] Defendant argues that the period started when Thomas Gilday retired in 1990.[15]

---

[13] The contract unambiguously establishes that Thomas Gilday was entitled to receive annual payments following his retirement for the remainder of his life. *See* Doc. 18-1 ¶ 2. As will be explained, Paragraph 3(a) effectively guaranteed a minimum of ten years of payments that would go to Gilday's spouse in the event he died within ten years of his retirement.

[14] *See, e.g.*, Doc. 21 at 6 ("Section 3 sets forth the employer's obligations *upon the death* of Thomas Gilday, and 3(a) specifically deals with *Thomas' death after his retirement* . Thomas' death, following his retirement, triggers the employer's obligation to continue payments to the widow.").

[15] *See, e.g.*, Doc. 20 at 2 ("Rather, Paragraph 3(a) guarantees at least ten years of annual payments to the Gilday family after Mr. Gilday's retirement. It does so by requiring the Corporation to make annual payments to Mr. Gilday (while he is alive) and his spouse (after he dies) for a minimum total of ten years from his date of *retirement*, not his date of death.").

Defendant's interpretation is the correct one. The ten-year minimum payment period began when Thomas Gilday retired and he began receiving the annual payments.

Plaintiff fails to distinguish between the event triggering the applicability of Paragraph 3(a) (Thomas Gilday's death) and the event triggering the start of the ten-year minimum payment period (Thomas Gilday's retirement). In the condition "until the Corporation has paid such annual amount to Gilday and/or his spouse for a period of ten (10) years or until her earlier death," the reference to "such annual amount" is a reference to the payments at the beginning of the sentence, "the annual amount payable to Gilday under Paragraph 2." The annual payments required by Paragraph 2 begin at Thomas Gilday's retirement. His retirement date therefore started the ten-year minimum payment period for Paragraph 3(a).

Once the Corporation made annual payments to Thomas Gilday for ten years, its Paragraph 3(a) obligations to pay his spouse (Plaintiff Gilday) were satisfied. Because the Corporation had already made annual payments to Thomas Gilday from his 1990 retirement until his death in December 2017[16]—well over ten years—the Corporation no longer had an obligation to pay Plaintiff Gilday by the time Thomas Gilday died.

The Agreement as a whole likewise reflects this intent to guarantee the Gildays annual payments for at least ten years (or until their earlier deaths). Paragraph 3(b), which would have applied had Thomas Gilday died *before* his retirement, also requires that the annual amount from Paragraph 2 "be paid to Gilday's spouse from the date of Gilday's death for a period of ten (10) years or until her earlier death."

There is only one reasonable interpretation of the contract terms. Plaintiff Gilday's interpretation—that the annual payments are required for ten years following Thomas Gilday's *death*—is illogical. Under this reading, BBDO would have been required to make annual payments

---

[16] Doc. 18 ¶ 8.

Case No. 1:18-cv-1108
Gwin, J.

"to Gilday and/or his spouse" after Gilday's death.[17] Obviously, Thomas Gilday could under no circumstances receive these payments, as he already would have passed.

The Agreement's unambiguous language therefore reflects the parties' intent.[18] The Court cannot not look beyond its plain meaning or rewrite its terms.[19]

Because Defendant BBDO made the annual payments to Thomas Gilday for over ten years, it no longer had an obligation to Plaintiff Gilday by the time he died. Plaintiff's breach of contract claim therefore fails.

### D. Plaintiff Gilday Has Forfeited the Promissory Estoppel and Unjust Enrichment Claims

Plaintiff Gilday does not appear to advance the promissory estoppel and unjust enrichment claims in her briefs. The Court therefore finds that they have been forfeited.[20]

Even if Plaintiff Gilday had argued in support of these claims, neither would have succeeded. Her breach of contract argument assumes the existence of a valid contract. In these circumstances, the existence of a valid contract precludes recovery for promissory estoppel and unjust enrichment.[21]

---

[17] *See, e.g.*, Doc. 20 at 8–9 ("Plaintiff's interpretation—that Annual Amounts were to be paid for ten years from Mr. Gilday's death (rather than his retirement)—does not make sense in light of the actual language of Paragraph 3(a). Following Plaintiff's argument and in light of Mr. Gilday's death, there is no logical explanation for Paragraph 3(a)'s requirement that the Corporation pay the Annual Amount to "Gilday and/or his spouse" for 10 years. Since Thomas Gilday would have already died in this scenario, he should not have been identified as a recipient of the Annual Amount in this sub-paragraph."); Doc. 21 at 4–5 ("The drafter of the Agreement wrote that the payments would continue 'until the Corporation has paid such annual amount to **Gilday and/or his spouse** for a period of ten (10) years' (emphasis added). This is an obvious flaw in the language of the contract, as Thomas Gilday *himself* logically could not receive payments to his widow that are triggered by his own passing. A more logical sentence would simply replace 'Gilday and/or his spouse' with 'Gilday's spouse'.").

[18] *See Eastham*, 754 F.3d at 361 ("[A]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." (quoting *Lager*, 2008-Ohio-4838, ¶ 16, and citing 11 Williston on Contracts § 30:5)).

[19] *See* Doc. 21 at 4–5 (arguing that "Gilday and/or his spouse" was an obvious flaw and that this should instead be read as "Gilday's spouse").

[20] *See James v. Goodyear Tire & Rubber Co.*, 354 F. App'x 246, 250 (6th Cir. 2009).

[21] *See, e.g., O'Neill v. Kemper Ins. Companies*, 497 F.3d 578, 583 (6th Cir. 2007) ("In Ohio, '[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel....'" (quoting *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996))); *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 646 (N.D. Ohio 2012) ("Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment cannot exist where there is a valid and enforceable written contract." (quoting *Kwikcolor Sand v. Fairmount Minerals Ltd.*, Cuyahoga App. No. 96717, 2011–Ohio–6646, 2011 WL 6775580, ¶ 14 (Ohio App. 8th Dist. 2011))).

Case No. 1:18-cv-1108
Gwin, J.

## IV. Conclusion

For these reasons, this Court rules in favor of Defendant BBDO on liability for breach of contract, promissory estoppel, and unjust enrichment.

IT IS SO ORDERED.

Dated: September 4, 2018
                                              *s/      James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE